**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| OSAMA M. EL-ATARI | ) | Case No. 09-14950-BFK |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| KEVIN R. MCCARTHY, *Trustee* | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 11-01427 |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This Adversary Proceeding is brought by the bankruptcy Trustee of the estate of Osama

El-Atari against Wells Fargo Bank, N.A., as successor to Wachovia Bank, N.A.  The Trustee

seeks to recover approximately $8,000,000 paid to Wells Fargo in October 2008, within two

years of the bankruptcy filing.  The Trustee asserts that the transfer was made with the intent to

hinder, delay or defraud the creditors of Mr. El-Atari, and therefore, that the transfer is avoidable

under Section 548(a)(1)(A) of the Bankruptcy Code and recoverable pursuant to 11 U.S.C. §

550(a).  Wells Fargo admits that it received the transfer, but denies that the transfer is avoidable.

This matter comes before the Court on the Trustee's Motion to Compel the production of

documents that Defendant, Wells Fargo, has withheld under claims of attorney-client privilege

and the attorney work product doctrine.  Docket No. 128.   Wells Fargo filed an Opposition

(Docket No. 146) and the Trustee filed a Reply Memorandum (Docket No. 156).  The Court

heard argument from the parties on January 22, 2013.

The Court ruled from the bench that certain documents were privileged by the attorney-client privilege and need not be produced.  Specifically, the Court ruled that communications between or among the Bank's personnel and outside counsel, McCarter & English and LeClair Ryan, were privileged by the attorney-client privilege and need not be produced.  *See* Declaration of Stevan E. Peckel, Docket No. 146, Ex. 4.[1]  The Court ordered the remainder of the documents to be produced for an *in camera* review.  The Court permitted Wells Fargo to redact from the produced documents any references to the filing (or not) of a Suspicious Activity Report (SAR) and any references to borrowers other than Mr. El-Atari or his related entities.  On February 1, 2013, Wells Fargo produced a total of 793 documents for an *in camera* review, all of which the Court has now reviewed.[2]  For the reasons stated below, the Court will grant the Trustee's Motion in part, and will deny it in part.

The documents fall into one of three categories: (a) documents that are covered by the attorney-client privilege because they seek, or give, legal advice, from or by Wells Fargo's in-house counsel, Mr. Peckel; (b) documents that are not covered by the attorney-client privilege but that, nonetheless, are covered by the work product doctrine, regardless as to whether Mr. Peckel is the author or the recipient of the document, but for which Mr. Peckel has tasked the author or the recipient to act as his agent for purposes of conducting an investigation in anticipation of litigation; and (c) documents for which neither the attorney-client privilege nor the work-product doctrine is applicable, and which, therefore, must be produced.

---

[1]   The Court also agreed with the Trustee's counsel that an e-mail is not privileged just because a law firm is cc'd on the e-mail.

[2]   The Court appreciates Wells Fargo's counsel's thoroughness in producing the documents for an *in camera* review, with annotations such as "all prior e-mails in string were produced," "produced in redacted form," "challenged elsewhere," "not challenged," and "not at issue per the Court's prior rulings."  The manner in which the documents were produced for the Court's *in camera* review was very helpful to the Court.

2

### I.   The Attorney-Client Privilege

The choice of law rule for claims of privilege is provided in Rule 501 of the Federal

Rules of Evidence.  It states:

> The common law—as interpreted by United States courts in the light of reason and
> experience—governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which
> state law supplies the rule of decision.

Fed. R. Evid. 501.  This is not a case in which applicable state law governs for purposes of a

claim or defense with respect to the claim of privilege.  Accordingly, federal law governs in this

case.  *In re Hotels Nev., LLC*, 458 B.R. 560, 567-71 (Bankr. D. Nev. 2011); *Ramette v. Bame (In

re Bame),* 251 B.R. 367, 372 (Bankr. D. Minn. 2000).

"The attorney-client privilege is the oldest of the privileges . . . known to the common

law. . . . Its purpose is to encourage full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration

of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  There is no dispute that the

attorney client privilege covers communications between a corporation's in-house counsel and

its employees.  *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.,* 2011 WL

1827900, at *2 (E.D. Va. 2011) (citing *Jonathan Corp. v. Prime Computer, Inc.* 114 F.R.D. 693,

696 (E.D. Va. 1987)).  The party asserting the attorney-client privilege has the burden of

demonstrating that the privilege applies.  *Id.*

Having reviewed all of the documents at issue *in camera*, the Court finds that Wells

Fargo has sustained its burden to show that the documents identified on Exhibit 1 attached are

privileged by the attorney-client privilege, and need not be produced.

## II.  The Work Product Doctrine

The work product doctrine protects documents that are prepared in anticipation of litigation.  *Hickman v. Taylor*, 329 U.S. 495, 509–14 (1947).  There are two kinds of documents protected by the work product doctrine—fact work product and opinion work product—the latter of which contains the mental impressions of attorneys.  The former can be compelled on a showing of substantial need and unavailability from other sources without undue hardship; the latter enjoys a near-absolute privilege.  Bankruptcy Rule 7026 (incorporating Fed. R. Civ. P. 26(b)(3)(A) and (B)) ("if the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation"); *Hickman v. Taylor,* 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of any attorney"); *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 608 (E.D. Va. 2010).

### A.  Whether Litigation Was Reasonably Foreseeable

The Trustee asserts that the work product doctrine does not apply at all in this case, because there was no reasonable prospect of litigation on the horizon.  Specifically, the Trustee argues:

> Here there was not even a plausible basis to "anticipate the contingency" of litigation because, taking Wells Fargo at its word, it never once had reason to believe anything other than (a) until October 1, 2008, its loan was going to be repaid in full, because it was 100 percent secured by completely liquid capital, or (b) after October 1, 2008, because Northern Trust was committed to loan El-Atari sufficient funds to repay the Wells Fargo loan in full.

Trustee's Reply Mem., Docket No. 156, p. 4.

This view, however, vastly understates the problem faced by Wells Fargo.  On August 19, 2008, William Frazier, Wells Fargo's point of contact with Mr. El-Atari, received a deeply

4

troubling e-mail that purported to be from a "Brad Stevens," at the New York offices of the law

firm of Reed Smith.  This e-mail was sent in response to Mr. Frazier's request for additional

information in support of Mr. El-Atari's application for an additional extension of credit from the

Bank.  The "Brad Stevens" e-mail quickly set off alarm bells within the Bank.  In fact, the Bank

learned that there was no Brad Stevens in the New York offices of Reed Smith.  Further, the e-

mail was sent from the domain name "reedsmithpc.com," whereas the law firm uses

"reedsmith.com."  The e-mail was obviously a fake.

 The Court finds that, as a result of the August 19th e-mail, the Bank was faced with the

prospect of litigation on a number of fronts.  First, the Bank may have needed to call a default

and bring an action to collect its $8,000,000 loan against Mr. El-Atari.  Mr. El-Atari might have

defended the Bank's collection lawsuit with a counterclaim, asserting that the Bank had called

the $8,000,000 loan precipitously (it has to be remembered that the misrepresentations in the

August 19th e-mail were made in support of a request for a new loan, not in connection with the

administration of the $8,000,000 loan).  The Bank needed to investigate the documentation of its

security interest in the Lincoln Benefit Life insurance policy that served as collateral.  It might

have needed to consider the possibility of litigation against Lincoln Benefit.  It might have

considered the need to look at other remedies available to it, should the Lincoln Benefit policy

prove to be a fraud (which it was), such as possible legal action against the professionals who

documented the loan.  And, finally, it needed to consider whether any of its personnel were

involved in the fraud, and if so, what the Bank's legal remedies against such persons might be.

 In short, it is unrealistic to suggest that, upon receipt of an obviously fraudulent e-mail

from (or on behalf of, it wasn't clear at the time) a borrower who was applying for new credit,

but from whom the Bank already had an $8,000,000 outstanding loan obligation, the Bank was

5

required to complacently sit back and await payment.  That isn't what happened here, nor should

it have been.  The Bank went into an investigatory mode, faced with the realistic prospect of

litigation on any number of fronts.

### B.  Whether the Documents Were Created "Because of" Anticipated Litigation

The more difficult problem in analyzing the application of the work product doctrine in

this case is the Trustee's assertion that the Bank wasn't conducting an investigation in

anticipation of litigation; rather, it was conducting an investigation of possible money laundering

and suspicious activity, something that it conducts in the ordinary course of its business and is

required to conduct by applicable banking regulations.

The work product doctrine does not protect materials that are "'prepared in the ordinary

course of business or pursuant to regulatory requirements or for other non-litigation purposes.'"

*Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (quoting  *Nat'l*

*Union Fire Ins. Co. v. Murray Sheet Metal Co*., 967 F.2d 980, 984 (4th Cir. 1992)).  As with the

attorney client privilege, the party claiming work product protection bears the burden of

demonstrating that it is applicable.  *Id*.

To apply the work product doctrine, the material in question must be prepared "*because*

*of* the prospect of litigation when the preparer faces an actual claim or a potential claim

following an actual event or series of events that reasonably could result in litigation." *Nat'l*

*Union*, 967 F.2d at 984 (emphasis in original).  Determining the "driving force" behind the

preparation of the documents in question is therefore required in resolving the applicability of the

work product doctrine.  *Id*.

6

The District Court's opinion in *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741 (E.D.

Va. 2007), provides a thoughtful exploration of *National Union's* "because of" test.  In *RLI*,

Judge Payne noted:

> Several other courts of appeals have been confronted more directly with "work product" that was created while litigation was imminent but that was arguably made for another purpose.  These courts have formulated rules that expressed more explicitly the principle suggested by *National Union* and *Goosman*.  In *United States v. Adlman*, 134 F.3d 1194 (2d Cir.1998), Judge Laval, looking in part to *National Union*, wrote that "the 'because of' formulation . . . withholds protection from documents . . . that would have been created in essentially similar form irrespective of the litigation."  *Id*. at 1202 (emphasis added).  The approach reflected in *Adlman* was explained with the observation that "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation," it is protected work product.  *Id*. at 1195 (emphasis added).  Other courts of appeals have established similar rules.
>
> *Adlman's* "but for" and "irrespective of" formulations are useful expositions of *National Union's* "because of" standard, and they provide guidance for applying *National Union* to the facts in this case.  In light of *National Union* and *Adlman*, the "work product" that RLI seeks to protect must have been created *because of* the prospect of litigation, when (1) "the [party] faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation," *National Union*, 967 F.2d at 984, and (2) the work product "would not have been prepared in substantially similar form but for the prospect of that litigation."  *Adlman*, 134 F.3d at 1195.

*Id*. at 747-48 (footnotes omitted).

At the same time, the "because of" test also has been described as the "more lenient"

standard, when compared with the Fifth Circuit's "primary motivating purpose" test.  *United*

*States v. Deloitte, LLP*, 610 F.3d 129, 136-37 (D.C. Cir. 2010) (comparing *Nat'l Union*'s

"because of" test, with *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) ("primary

motivating purpose" test)).  The District Court for the District of Columbia recently discussed

the "because of" test, noting:

> The D.C. Circuit has also recognized that "[u]nder the more lenient 'because of' test, material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status."  *Deloitte*, 610 F.3d at 138; *see also United*

*States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) ("[A] document created because of anticipated litigation . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation").  This aspect of the work-product doctrine allows courts to extend work-product protection to a document that "serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation." *Deloitte,* 610 F.3d at 138.  Acknowledging that so-called multi-purpose documents are *capable* of enjoying work-product protection, however, says nothing of what a party must show to demonstrate that a multi-purpose document was in fact prepared because of anticipated litigation.  To be sure, a party bears a heavier burden when seeking work-product protection for a multi-purpose document because the D.C. Circuit has also recognized that "the [work-product] privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes.'" *In re Sealed Case*, 146 F.3d at 887 (quoting *Linde Thomson*, 5 F.3d at 1515).  It is the proponent of the work-product protection that bears the burden of demonstrating that the prospect of litigation was an independent, legitimate, and genuine purpose for the document's creation.

*United States v. ISS Marine Servs., Inc.*, 2012 WL 5873682 (D. D.C. 2012).

The Ninth Circuit has discussed the difficulty of determining whether "dual purpose" documents, that is, documents created both in anticipation of litigation and for other business needs, may enjoy work product protection.  *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.) ("Torf"),* 357 F.3d 900 (9th Cir. 2004).  The documents at issue were prepared both in anticipation of potential environmental litigation with the EPA and for the purpose of determining compliance with an environmental Consent Order.  The Court noted:

The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation.  The circumstances surrounding the document's preparation must also be considered.  In the "because of" Wright & Miller formulation, "the nature of the document *and* the factual situation of the particular case" are key to a determination of whether work product protection applies. Wright & Miller § 2024 (emphasis added).  When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.

*Id.* at 908.  Ultimately, the Ninth Circuit held that the documents were protected by the work product doctrine notwithstanding their dual purpose "because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole."  *Id*. at 910.

The Court finds that in this case, the Trustee's argument is too all-encompassing and would result in the loss of work product protection whenever there is a parallel, non-litigation need to conduct an internal investigation.  In the case of regulated institutions such as banks, which are *always* required to conduct investigations into possible money laundering and suspicious activities where such facts arise, this necessarily would mean that banks could *never* have the protection of the work product doctrine.  The Court views the more lenient "because of" test as being capable of accommodating the need for mandatory internal investigations, while at the same time maintaining work product protection where applicable.  The Trustee's position in this case, while alluding to the Fourth Circuit's "because of" test, really calls for the application of the Fifth Circuit's more restrictive "primary motivating purpose" test.

Having reviewed all of the documents at issue *in camera*, the Court finds that the documents listed on Exhibit 2 were created in anticipation of litigation and are covered by the work product doctrine.  Further, the Trustee has not demonstrated a substantial need for these documents.  The documents on Exhibit 2 need not be produced by Wells Fargo.

### III.  Documents Covered by Neither the Attorney-Client Privilege Nor the Work Product Doctrine

To a certain, limited extent, Wells Fargo has overplayed its hand, and has claimed attorney-client privilege or work product with respect to a number of documents that do not enjoy either of the foregoing protections.  Some examples are:

- E-mails to the Bank's in-house attorney, in which a meeting or telephone call is being scheduled ("Steve [Peckel], I will give you a call in the morning to discuss," or "Steve, I will call you to give you the background").

- Mr. Frazier's (a non-lawyer's) statement to other non-lawyers that, "under its terms, I don't believe the loan can be called based on what we know today." This is Mr. Frazier's opinion; it is neither legal advice nor a request for legal advice from an attorney.

- E-mails relating to the charge-off, or not, of the $8,000,000 loan. The charge-off of a loan, or not, is purely a business function. Although the charge-off of a loan is in some ways related to the litigation (the prospects of success in the litigation will have to be considered in the decision), the documents related to the decision to charge off the loan are not prepared in anticipation of litigation.

- E-mails related to the payment of referral fees for the El-Atari customer relationship do not constitute work product.

- E-mails (within Mr. Frazier's department and neither to nor from counsel) regarding who might be held legally responsible for the deficiencies in the loan documentation, and whether certain personnel other than Mr. Frazier (who, the Court hastens to make clear, was not suspected of any wrongdoing whatsoever) may or may not have been a participant in the fraudulent activity.

- Mr. Frazier's statement (redacted by Wells Fargo) that: **"ON OCTOBER 1, COUNSEL RECEIVED A RESPONSE FROM LBL [LINCOLN BENEFIT LIFE] INDICATING THAT THE POLICY COLLATERALLY ASSIGNED TO WACHOVIA HAD NO CASH SURRENDER VALUE. THE POLICY THAT**

10

**WAS DELIVERED TO WACHOVIA HAS [A] FALSE POLICY NUMBER AND A FALSE CASH VALUE."** (All capitals, and bold type in original). Lincoln Benefit's statement to Wachovia's (Wells Fargo's predecessor's) in-house counsel is not privileged, and Wells Fargo cannot clothe it in privilege or work product because it passed through its counsel's office.

Having reviewed the documents in camera, the Court finds that the documents listed on Exhibit 3 are neither privileged by the attorney-client privilege nor protected by the work product doctrine. The Court will order their production.

## IV.   The Court Rejects the Trustee's "At Issue" Argument

Finally, the Trustee asserts that Wells Fargo has waived the applicable privileges because it has put its good faith at issue in this litigation, specifically, by asserting the good faith transferee defense to the Trustee's claims under 11 U.S.C. § 548(c). Trustee's Mem., Docket No. 129, pp. 15-16 ("Wells Fargo is asserting the absence of knowledge of El-Atari's planned fraud against Northern Trust; and it cannot make that assertion and at the same time seek to shield those documents which . . . bear high relevance to that defense.") The Court finds that, in this case, the Trustee overstates the "at issue" exception.

The attorney-client privilege can be waived by asserting reliance on counsel as an affirmative defense. *United States v. Moazzeni*, 2012 WL 6019101, at *9 (E.D. Va. 2012); *Botkin v. Donegal Mut. Ins. Co.*, 2011 WL 2447939, at *6 (W.D. Va. 2011) (citing *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994)). In *Botkin*, the Court adopted the three-part test articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), for determining when a party has impliedly waived the privilege by its own affirmative conduct:

> (a) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party; (b) through this act, the asserting party put the protected

11

information at issue by making it relevant to the case; and (c) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id*. (quoting *Hearn v. Rhay*, 68 F.R.D. at 581).[3]

Here, the most that can be said is that Wells Fargo has asserted that it conducted an investigation before it accepted the funds from Northern Trust. Wells Fargo has not affirmatively asserted an advice of counsel defense (not surprisingly, because there is no such defense to a fraudulent transfer claim). It has not put the advice of its counsel at issue. *See, e.g.*, *Moazzeni*, 2012 WL 6019101, at *10; *LifeNet, Inc. v. Musculoskeletal Transplant Found., Inc.*, 490 F. Supp. 2d 681, 685 (E.D. Va. 2007) ("Once a party announces that it will rely on advice of counsel . . . in response to an assertion of willful infringement, the attorney-client privilege is waived"). The assertion of a good faith transferee defense under Section 548(c) of the Bankruptcy Code does not in and of itself cause a waiver of the attorney-client privilege and the work product doctrine. There has to be more—some affirmative act to put the attorney's advice at issue in the case.[4]

The Court finds that Wells Fargo has not put the advice of its counsel at issue, such that the attorney client privilege and the work product doctrine were waived in this case. The Motion will be denied, insofar as the Trustee claims an "at issue" waiver.

### Conclusion

For the foregoing reasons, the Court finds that: (a) the documents on <u>Exhibit 1</u>, attached, are privileged by the attorney-client privilege and need not be produced; (b) the documents on <u>Exhibit 2</u>, attached, are protected by the work product doctrine and need not be produced; (c) the

---

[3]  The Fourth Circuit recently cited the *Rhone–Poulenc Rorer* decision with approval, in an unreported opinion. *Shaheen v. WellPoint Cos, Inc.*, 2012 WL 3140306 (4th Cir. 2012).

[4]  The Court is confident that the District Court can, and will, prevent any unfair use of counsel's advice at the trial in this matter, in light of the assertion of the attorney-client privilege and the work product doctrine.

documents on Exhibit 3, attached, are neither privileged nor protected by the work product

doctrine, and must be produced within 10 days of the date hereof; and  (d) the Motion is denied,

insofar as it claims an "at issue" waiver by Wells Fargo.  A separate Order will issue.


Date: _____          _____
                                        Brian F. Kenney
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

J. Jonathan Schraub, Esquire
Sands Anderson PC
1497 Chain Bridge Road, Suite 202
McLean, VA 22101
Special Counsel for the Plaintiff

D. Marc Sarata, Esquire
Leach Travell Britt, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Counsel to Plaintiff

Douglas Paul Lobel, Esquire
Cooley LLP
11951 Freedom Drive
Reston, VA   20190
Counsel for Defendant Wells Fargo Bank, N.A.

# EXHIBIT 1

Document #

| | | | |
|---|---|---|---|
| 14 | 543 | 772 | 905 |
| 15 | 544 | 773 | 906 |
| 70 | 545 | 774 | 942 |
| 72 | 546 | 787 | 943 |
| 73 | 547 | 789 | 969 |
| 123 | 548 | 791 | 970 |
| 159 | 549 | 792 | 1053 |
| 160 | 565 | 793 | 1071 |
| 172 | 566 | 794 | 1072 |
| 179 | 588 | 797 | 1075 |
| 184 | 589 | 798 | 1076 |
| 185 | 590 | 801 | 1085 |
| 194 | 591 | 818 | 1086 |
| 196 | 592 | 819 | 1092 |
| 197 | 593 | 837 | 1093 |
| 260 | 595 | 838 | 1098 |
| 262 | 626 | 839 | 1099 |
| 263 | 627 | 841 | 1105 |
| 264 | 641 | 842 | 1106 |
| 331 | 685 | 843 | 1115 |
| 332 | 686 | 844 | 1116 |
| 333 | 689 | 847 | 1120 |
| 477 | 690 | 848 | 1121 |
| 478 | 699 | 849 | 1122 |
| 518 | 700 | 850 | 1191 |
| 519 | 701 | 851 | 1192 |
| 524 | 702 | 852 | 1257 |
| 525 | 703 | 897 | 1285 |
| 526 | 759 | 898 | 1294 |
| 527 | 762 | 900 | 1295 |
| 542 | 763 | 901 | 1300 |
| | 770 | 902 | 1301 |
| | 771 | 904 | 1313 |

1

| | | | |
|---|---|---|---|
| 1314 | 1705 | 1821 | 2001 |
| 1315 | 1713 | 1822 | 2002 |
| 1393 | 1714 | 1827 | 2003 |
| 1396 | 1715 | 1828 | 2004 |
| 1397 | 1716 | 1842 | 2005 |
| 1428 | 1717 | 1843 | 2026 |
| 1429 | 1722 | 1857 | 2034 |
| 1430 | 1723 | 1858 | 2044 |
| 1431 | 1724 | 1859 | 2045 |
| 1440 | 1725 | 1860 | 2046 |
| 1441 | 1726 | 1861 | 2047 |
| 1488 | 1727 | 1862 | 2049 |
| 1504 | 1728 | 1863 | 2050 |
| 1505 | 1729 | 1864 | 2077 |
| 1508 | 1730 | 1865 | 2081 |
| 1509 | 1731 | 1874 | 2091 |
| 1510 | 1732 | 1875 | 2092 |
| 1511 | 1741 | 1876 | 2093 |
| 1512 | 1742 | 1922 | 2094 |
| 1532 | 1743 | 1927 | 2095 |
| 1533 | 1744 | 1930 | 2096 |
| 1537 | 1745 | 1931 | 2097 |
| 1538 | 1746 | 1940 | 2098 |
| 1542 | 1747 | 1941 | 2099 |
| 1553 | 1748 | 1948 | 2101 |
| 1554 | 1749 | 1969 | 2102 |
| 1557 | 1750 | 1970 | 2127 |
| 1558 | 1751 | 1980 | 2132 |
| 1559 | 1752 | 1981 | 2133 |
| 1564 | 1754 | 1995 | 2134 |
| 1680 | 1755 | 2000 | 2140 |

2

# EXHIBIT 2

Document #

| | | |
|---|---|---|
| 126 | 217 | 483 |
| 127 | 218 | 577 |
| 128 | 219 | 578 |
| 129 | 221 | 579 |
| 130 | 223 | 632 |
| 131 | 224 | 636 |
| 132 | 225 | 637 |
| 133 | 226 | 638 |
| 149 | 227 | 644 |
| 150 | 228 | 645 |
| 151 | 230 | 646 |
| 153 | 231 | 662 |
| 154 | 232 | 1034 |
| 163 | 233 | 1035 |
| 164 | 234 | 1036 |
| 175 | 235 | 1041 |
| 176 | 236 | 1042 |
| 191 | 237 | 1043 |
| 192 | 238 | 1045 |
| 195 | 239 | 1057 |
| 204 | 240 | 1372 |
| 209 | 241 | 1373 |
| 210 | 242 | 1374 |
| 211 | 243 | 1376 |
| 212 | 244 | 1380 |
| 213 | 245 | 1381 |
| 214 | 246 | 1382 |
| 215 | 247 | |
| 216 | 248 | |

1

# EXHIBIT 3

| Document # | Notes |
|---|---|
| 170 | |
| 171 | |
| 173 | Produce redacted portion |
| 178 | Produce redacted portion |
| 183 | Produce redacted portion |
| 188 | |
| 198 | |
| 199 | |
| 200 | |
| 201 | |
| 202 | |
| 203 | |
| 205 | |
| 222 | |
| 265 | |
| 266 | |
| 267 | Produce redacted portion |
| 456 | |
| 457 | |
| 458 | Produce redacted portion |
| 494 | |
| 495 | |
| 496 | |
| 550 | Produce redacted portion |
| 562 | Produce redacted portion |
| 576 | Produce redacted portion |
| 594 | Produce redacted portion |
| 596 | Produce redacted portion |
| 597 | |
| 598 | |
| 599 | Produce redacted portion |

| Document # | Notes |
|---|---|
| 607 | Produce redacted portion |
| 611 | Produce redacted portion |
| 640 | |
| 642 | Produce redacted portion |
| 648 | |
| 663 | |
| 664 | Produce redacted portion |
| 728 | |
| 729 | Produce redacted portion |
| 733 | Produce redacted portion |
| 795 | Produce redacted portion |
| 829 | |
| 830 | |
| 831 | |
| 832 | |
| 833 | |
| 834 | |
| 835 | Produce redacted portion |
| 846 | Produce redacted portion |
| 854 | Produce redacted portion |
| 859 | |
| 872 | |
| 873 | |
| 874 | |
| 875 | |
| 876 | |
| 877 | |
| 878 | |
| 879 | Produce redacted portion |
| 899 | Produce redacted portion |
| 951 | |
| 1008 | Produce redacted portion |

| | |
|---|---|
| 1011 | Produce redacted portion |
| 1015 | Produce redacted portion |
| 1031 | |
| 1051 | |
| 1052 | |
| 1054 | Produce redacted portion |
| 1065 | Produce redacted portion |
| 1082 | Produce redacted portion |
| 1329 | Produce redacted portion |
| 1333 | Produce redacted portion |
| 1389 | Unredact this portion: "Received a response from LBL indicating the Policy collaterally assigned to Wachovia had no cash surrender value. The Policy that was delivered to Wachovia has false Policy Number and false Cash Value." |
| 1391 | Unredact this portion: "Received a response from LBL indicating the Policy collaterally assigned to Wachovia had no cash surrender value. The Policy that was delivered to Wachovia has false Policy Number and false Cash Value." |
| 1392 | |
| 1394 | Produce redacted portion |
| 1400 | Unredact this portion: "Received a response from LBL indicating the Policy collaterally assigned to Wachovia had no cash surrender value. The Policy that was delivered to Wachovia has false Policy Number and false Cash Value." |

| | |
|---|---|
| 1401 | Produce redacted portion |
| 1470 | |
| 1472 | |
| 1473 | |
| 1474 | |
| 1475 | |
| 1476 | |
| 1477 | |
| 1478 | |
| 1479 | Produce redacted portion |
| 1483 | Produce redacted portion |
| 1487 | |
| 1489 | |
| 1490 | |
| 1491 | |
| 1492 | |
| 1536 | Produce redacted portion |
| 1563 | Unredact this portion: "Received a response from LBL indicating the Policy collaterally assigned to Wachovia had no cash surrender value. The Policy that was delivered to Wachovia has false Policy Number and false Cash Value." |
| 1578 | |
| 1579 | |
| 1584 | |
| 1634 | |
| 1635 | Produce redacted portion |
| 1685 | Produce redacted portion |
| 1689 | Produce redacted portion |
| 1691 | Produce redacted portion |
| 1694 | |
| 1695 | |
| 1696 | |
| 1697 | |

| | | | | |
|---|---|---|---|---|
| 1698 | | | 1780 | |
| 1699 | | | 1781 | |
| 1700 | | | 1782 | |
| 1701 | | | 1783 | |
| 1702 | | | 1784 | |
| 1703 | | | 1786 | |
| 1704 | | | 1788 | |
| 1710 | | | 1789 | |
| 1711 | | | 1791 | |
| 1712 | | | 1792 | |
| 1718 | | | 1793 | |
| 1719 | | | 1794 | |
| 1721 | Produce redacted portion | | 1795 | |
| 1733 | | | 1796 | |
| 1734 | | | 1798 | |
| 1735 | | | 1799 | |
| 1736 | Produce redacted portion | | 1800 | |
| 1739 | | | 1801 | |
| 1740 | | | 1802 | |
| 1753 | | | 1803 | |
| 1756 | | | 1804 | |
| 1757 | | | 1805 | |
| 1758 | | | 1806 | |
| 1759 | | | 1807 | |
| 1760 | | | 1823 | |
| 1761 | | | 1824 | |
| 1762 | | | 1829 | Produce redacted portion |
| 1763 | | | 1830 | |
| 1764 | | | 1831 | |
| 1765 | | | 1832 | Produce redacted portion |
| 1766 | Produce redacted portion | | 1833 | |
| 1767 | | | 1834 | |
| 1773 | Produce redacted portion | | 1835 | |
| 1776 | | | 1836 | |
| 1777 | | | 1837 | |
| 1778 | | | 1838 | |
| 1779 | | | 1839 | |

3

| | | | | |
|---|---|---|---|---|
| 1841 | Produce redacted portion | | 1903 | |
| 1844 | Produce redacted portion | | 1904 | Redacted portion need not be produced. |
| 1845 | | | 1905 | Redacted portion need not be produced. |
| 1846 | Produce redacted portion | | 1906 | |
| 1847 | | | 1907 | |
| 1848 | | | 1908 | |
| 1849 | | | 1909 | |
| 1850 | | | 1910 | |
| 1851 | | | 1911 | |
| 1852 | | | 1912 | |
| 1866 | | | 1913 | |
| 1867 | | | 1914 | |
| 1868 | | | 1915 | |
| 1869 | | | 1916 | |
| 1870 | | | 1917 | |
| 1871 | | | 1918 | |
| 1872 | | | 1919 | |
| 1873 | | | 1920 | |
| 1877 | | | 1921 | |
| 1878 | | | 1925 | |
| 1879 | | | 1926 | |
| 1880 | | | 1928 | |
| 1884 | Produce redacted portion | | 1934 | |
| 1885 | | | 1935 | |
| 1888 | | | 1936 | |
| 1889 | Redacted portion need not be produced. | | 1937 | |
| 1891 | | | 1938 | |
| 1892 | | | 1939 | |
| 1893 | | | 1942 | |
| 1894 | | | 1943 | |
| 1895 | | | 1943 | |
| 1896 | | | 1944 | |
| 1899 | | | 1945 | |
| 1900 | | | 1946 | |
| 1901 | | | 1947 | |
| 1902 | | | | |

| | | | |
|---|---|---|---|
| 1949 | | 1992 | |
| 1950 | | 1993 | |
| 1951 | | 1994 | |
| 1952 | | 2007 | |
| 1953 | | 2008 | |
| 1954 | | 2009 | Produce redacted portion |
| 1955 | | 2010 | |
| 1956 | | 2011 | |
| 1957 | | 2012 | |
| 1958 | | 2013 | Produce redacted portion |
| 1959 | | 2015 | |
| 1960 | | 2016 | |
| 1961 | | 2017 | Produce redacted portion |
| 1962 | | 2020 | Produce redacted portion |
| 1963 | | 2023 | |
| 1964 | | 2024 | |
| 1965 | | 2025 | |
| 1966 | | 2030 | Produce redacted portion |
| 1967 | | 2031 | |
| 1968 | | 2032 | |
| 1971 | | 2035 | |
| 1972 | | 2036 | |
| 1973 | | 2037 | |
| 1974 | | 2038 | |
| 1975 | | 2039 | |
| 1976 | | 2040 | |
| 1977 | | 2041 | |
| 1978 | | 2053 | |
| 1979 | | 2054 | |
| 1983 | | 2055 | |
| 1984 | Produce redacted portion | 2056 | |
| 1985 | | 2057 | |
| 1987 | | 2058 | |
| 1988 | | 2059 | |
| 1989 | | 2060 | Produce redacted portions |
| 1990 | | 2061 | |
| 1991 | | 2062 | Produce redacted portion |

5

| | | | | |
|---|---|---|---|
| 2063 | | 2115 | |
| 2064 | | 2116 | |
| 2065 | Produce redacted portion | 2117 | |
| 2066 | | 2118 | |
| 2067 | | 2119 | |
| 2068 | | 2123 | Produce redacted portion |
| 2069 | | 2126 | Produce redacted portion |
| 2070 | | 2131 | Produce redacted portion |
| 2071 | | 2135 | Produce redacted portion |
| 2072 | Produce redacted portion | 2136 | |
| 2073 | | 2137 | |
| 2074 | | 2138 | |
| 2075 | | 2139 | |
| 2076 | Produce redacted portion | 2142 | |
| 2078 | Produce redacted portion | 2143 | |
| 2079 | | 2144 | |
| 2080 | Produce redacted portion | 2145 | |
| 2082 | | 2146 | |
| 2083 | | 2147 | |
| 2084 | | 2148 | |
| 2085 | Produce redacted portion | 2149 | |
| 2087 | | 2150 | |
| 2088 | Produce redacted portion | 2151 | |
| 2090 | Produce redacted portion | 2154 | |
| 2100 | | 2155 | |
| 2103 | | 2156 | |
| 2104 | | 2157 | |
| 2105 | | 2158 | |
| 2106 | | 2159 | |
| 2107 | | 2160 | |
| 2108 | | 2161 | |
| 2109 | | 2162 | |
| 2110 | | 2163 | Produce redacted portion |
| 2111 | | 2164 | |
| 2112 | | 2165 | |
| 2113 | | 2166 | |
| 2114 | | 2167 | |

6

| | | | | |
|---|---|---|---|---|
| 2168 | | | 2175 | |
| 2169 | Produce redacted portion | | 2176 | |
| 2172 | | | 2177 | |
| 2173 | | | 2178 | |
| 2174 | | | | |